UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JESUS CORTES DIAZ, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DAWS MANUFACTURING COMPANY INC, et al.,<br><br>    Defendants. | Case No. 5:12-cv-05325-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 101, 102 |

Defendants Daws Manufacturing Company, Inc. and Diversified Fasteners, Inc. move for summary judgment on Plaintiffs' claims for strict products liability and negligence. Defendants' motions will be GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

In 2010, the Cortes Diaz family was driving on Highway 101 when their truck encountered mechanical problems. Second Am. Compl. ("SAC") ¶ 17. Jesus Cortes Diaz pulled over to the shoulder. Id. While the truck was parked, another driver crashed into it from behind. Id. ¶ 19. A toolbox mounted on Plaintiffs' truck was pushed into the cab, where it fatally struck four-year-old Jose Cortes Diaz. Id. Jesus (Jose's father) witnessed the crash, as did Margarita Diaz (Jose's mother) and Itzel Cortes Diaz (Jose's sister). Id. ¶ 21.

In this action, the Cortes Diaz family brings claims for strict products liability and negligence against entities involved in the manufacture and sale of the toolbox. Now before the Court are motions for summary judgment by Defendants Daws Manufacturing Company, Inc. (Dkt. No. 101) and Diversified Fasteners, Inc. (Dkt. No. 102).

## II. LEGAL STANDARD

"Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Samuels v. Holland American Line—USA Inc., 656 F.3d 948, 952 (9th Cir. 2011) (citing Fed. R. Civ. P. 56(a)). The Court "must draw all reasonable inferences in favor of the nonmoving party." Id. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

## III. DISCUSSION

### A. Liability for Injuries to Jose Cortes Diaz

As discussed above, four-year-old Jose Cortes Diaz suffered fatal injuries when the toolbox entered the cab and struck him in the head. SAC ¶ 19. Plaintiffs allege that Jose's death was caused by the toolbox's defective design. Id. ¶¶ 24–29. In particular, Plaintiffs allege that the plastic cleats used to attach the toolbox to the truck "were of insufficient strength to retain the tool boxes to the truck bed in the event of a foreseeable rear end impact." Id. ¶ 34. Plaintiffs allege that

Case No.: 5:12-cv-05325-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

2

all Defendants, including Daws Manufacturing and Diversified Fasteners, are liable for Jose's injuries under theories of negligence and strict products liability. Id. ¶¶ 23–52.

Daws argues that Plaintiffs cannot show that Jose's injuries resulted from Daws's conduct.[1] The parties agree that, to establish causation, "it must be shown that the defendant's act . . . was a substantial factor in bringing about the injury." Padilla v. Rodas, 160 Cal. App. 4th 742, 752 (2008). Daws contends that no reasonable juror could find that a defect in the toolbox (or its mounting hardware) was a substantial factor in causing Jose's death because no alternative design could have prevented the toolbox from coming loose and entering the cab. Def. Daws Manufacturing Company, Inc.'s Mot. for Summ. J. ("Daws MSJ") 4–6, Dkt. No. 101. "The forces in this incident," Daws argues, "were so tremendous that the bed of Plaintiffs' truck to which any mounting mechanism would have been secured is so bent and crushed into a V shape that no expert will opine that the strength of the mounting mechanism played a causal role in this tragic incident." Daws Manufacturing Company, Inc.'s Reply in Support of Mot. for Summ. J. ("Daws Reply") 6, Dkt. No. 115; see also Daws MSJ 5 (quoting a Sheriff's Deputy who testified that he initially thought Plaintiffs' truck was a hatchback car because it had been so deformed by the impact); Rosenblatt Decl., Dkt. No. 101-3 (attaching photographs of Plaintiffs' truck after the crash).

Plaintiffs respond that Daws has failed to produce evidence showing that alternative mounting hardware would not have prevented Jose's death. Pls.' Opp'n to Daws MSJ ("Daws Opp'n") 7, Dkt. No. 111. Plaintiffs note that Daws's expert's declaration is silent on this issue, and that "Daws performed no testing, studies, or analysis to determine the strength of the plastic cleats in application or to determine whether stronger more robust materials could be used to restrain the toolboxes in vehicular collisions." Id. Rather, Plaintiffs' expert opines that Jose's fatal head injury "would have been highly unlikely" if the toolbox had not entered the cab, and that "the addition of

---

[1] Diversified Fasteners does not move for summary judgment as to liability for injuries to Jose Cortes Diaz.

Case No.: 5:12-cv-05325-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

3

the tool box to the rear bed on the Diaz vehicle altered the crush zone and intrusion reduction designs of the pickup truck." Piziali Decl. ¶¶ 8, 9, Dkt. No. 113-1 Ex. B. Plaintiff's expert does not offer an opinion as to whether the plastic mounting hardware played a role in the fatality, but the expert states that "the tool box altered the crashworthiness of the Diaz vehicle." Id.

The Court finds that a factual dispute exists as to whether Daws's conduct in designing the toolbox was a substantial factor that led to Jose's fatal injuries. Neither party's expert declaration directly addresses whether alternative mounting hardware would have made a difference. However, Plaintiff's expert states that the toolbox likely altered the crashworthiness of Plaintiffs' vehicle. Daws Opp'n 7–8. Plaintiff also notes that Daws failed to analyze how the design of the toolbox might affect a vehicle's crashworthiness in the event a foreseeable rear impact. Id. This evidence is sufficient to establish a factual dispute about whether the design of the toolbox substantially contributed to the fatality. Accordingly, Daws's motion for summary judgment as to liability for injuries to Jose Cortes Diaz will be denied.

### B. Liability for Emotional Distress Injuries to Jesus and Margarita Diaz for Witnessing Injuries to Jose Cortes Diaz

Plaintiffs allege that Daws and Diversified are liable for the emotional distress Plaintiffs suffered from witnessing the collision. SAC ¶ 46–52. Under California law, "a plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, but only if, said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." Thing v. La Chusa, 48 Cal. 3d 644, 667–668 (1989).

Defendants do not dispute that Plaintiffs have satisfied the first and third elements of the Thing v. La Chusa test. However, Defendants argue that Plaintiffs fail to satisfy the second element because, when the collision happened, Jesus and Margarita were unaware that the toolbox was the cause of Jose's injuries. Daws MSJ 8–10; Diversified Fasteners, Inc.'s Mot. for Summ. J.

Case No.: 5:12-cv-05325-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
4

("Diversified MSJ") 6–7, Dkt. No. 103. For instance, Margarita testified that she did not learn until after the collision that there was a connection between the toolbox and her son's injuries:

> Q: . . . When did you first begin to think there might have been a connection between the tool box that was mounted on your pickup truck and the injuries your son suffered?
>
> [Objection.]
>
> A: When? At the hospital I was told that something had hit him in the face. They asked what did we have, something hard, something that we had. And I told him that we only had a tool box and they said that it's possible that that's what caused the disfigurement to his face.
>
> Q: That was the first time that you considered that the tool box might have played a role?
>
> A: Yes.

Daws MSJ 10. Similarly, Jesus testified he did not remember the collision:

> Q: . . . I believe I understand from your testimony you don't remember the impact of the collision; is that correct?
>
> A: Yes.
>
> Q: And there is a period of time from just before the accident until some later time when you have no recollection of what occurred in that time period, correct?
>
> A: Yes.
>
> Q: Okay. What I would like you to tell me now is what's the very first thing you remember after the accident happened.
>
> A: Well, that my little boy was in the truck.
>
> Q: Where were you at that time?
>
> A: Well, I, at that moment, perhaps, was on the ground because my wife thought I was dead.
>
> Q: With respect to where the truck had been, where were you when you first became aware of yourself?
>
> A: I remember that I stood up, and I looked over to where my pickup was and I walked about some four steps, then I collapsed again.

|   |   |
|---|---|
| 1 | Q: Okay. And the pickup truck was several hundred feet away at that point; is that right? |
| 2 | A: It was about some 30 feet. |
| 3 | Q: Okay. And you took four steps towards the truck and then collapsed again? |
| 4 | |
| 5 | A: Yes. |
| 6 | Q: Were you aware of your own injuries at that time? |
| 7 | A: No. |
| 8 | Q: What happened next? |
| 9 | A: Well, I don't remember anymore. I was taken to the hospital from there, and the only thing I remember is that I was asking about my little boy—what had happened to my little boy? |

Daws Reply 3–4.

Plaintiffs argue that they are nevertheless entitled to recover emotional distress damages from Defendants because a plaintiff need not visually observe the injury. Daws Opp'n 9. Rather, a "plaintiff may recover based on an event perceived by other senses so long as the event is contemporaneously understood as causing injury to a close relative." Id. (quoting Bird v. Saenz, 28 Cal. 4th 910, 916–17 (2002)). But, as Defendants point out, Bird provides little support for Plaintiffs' position. Daws MSJ 9. In that case, the California Supreme Court held that the plaintiffs could not recover emotional distress damages because, at the time of the injury, they were unaware that defendants' conduct was to blame. Bird, 28 Cal. 4th at 921–22; see also Daws Opp'n 10 (acknowledging that the Bird plaintiffs "could not show that they were present during the injury-causing event, nor were they aware it was causing injury"). Similarly, Defendants cite Fortman, in which the plaintiff witnessed her brother's death during a scuba diving accident that was caused by malfunctioning diving equipment. Daws MSJ 9 (citing Fortman v. Förvaltningsbolaget Insulan AB, 212 Cal. App. 4th 830, 845 (2013)). The court held that the plaintiff could not recover emotional distress damages from the equipment's manufacturer because, at the time of the accident, the plaintiff thought that the diver was having a heart attack

Case No.: 5:12-cv-05325-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

6

rather than experiencing an equipment failure. Fortman, 212 Cal. App. 4th at 845–46.

Here, as in Bird and Fortman, Jesus's and Margarita's testimony shows that they were unaware at the time of the collision that Jose was injured by the toolbox, even though they perceived the crash as it happened. Plaintiffs have not presented evidence showing otherwise. Accordingly, the Court will grant summary judgment in favor of Daws and Diversified as to Margarita's and Jesus's claims for emotional distress damages.

### C. Liability for Injuries to Jesus Cortes Diaz (and Related Emotional Distress Injuries)

When the collision happened, Jesus was leaning into his truck to retrieve Jose. Daws MSJ 7. The impact left Jesus unconscious, but he was not struck by the toolbox. Id. Plaintiffs have agreed to withdraw their claims for injuries to Jesus (and claims for related emotional distress injuries to Margarita and Itzel). Daws Opp'n 9; Diversified Opp'n 4. Accordingly, summary judgment will be granted to Defendants on these claims.

### D. Punitive Damages

Punitive damages are available under California law where a product manufacturer engages in "conduct evincing 'a conscious disregard of the probability that the actor's conduct will result in injury to others.' " Grimshaw v. Ford Motor Co., 119 Cal. App. 3d 757, 808 (quoting Dawes v. Sup. Ct., 111 Cal. App. 3d 82, 88 (1980)).

Here, Plaintiffs argue that punitive damages are appropriate because freeway collisions are foreseeable, and Daws disregarded the likelihood that its toolbox would injure passengers when such a collision occurred. Daws Opp'n 11–14. In particular, Plaintiffs cite the deposition testimony of Daws's corporate representative to show, for example, that Daws expected the toolbox to be used on freeways, it did not perform testing to determine how the toolbox might affect vehicles' crashworthiness, it did not analyze the effects of rear-end impacts, and it did not analyze the strength of the plastic cleats that were used to mount the toolbox. Id. at 11–12. Plaintiffs also present expert testimony showing that Daws failed to consider materials other than plastic, never analyzed the hazards of plastic cleats, discouraged users from drilling holes in their

trucks (which, Plaintiffs argue, would have provided a more secure mounting method), and failed to warn consumers that the plastic cleats could fail during a collision. Id. at 12.

Daws responds that it is entitled to summary judgment on the issue of punitive damages because it did, in fact, test the strength of the plastic cleats.[2] Daws MSJ 7. Daws also points out that it has sold "over 2 million similar toolboxes," and "there has not been a single reported instance of an injury" resulting from the mounting hardware failing during a collision. Id. Daws argues that "Plaintiffs cannot show a conscious disregard or malice here where literally millions of the alleged defective products have been sold over decades and there is not a single reported instance of a mechanism of injury similar to this case." Id. According to Daws, no testing or alternative design would have prevented the injuries Plaintiffs suffered, because Plaintiffs' truck was "so damaged, bent and crushed . . . that it [was] nearly unrecognizable." Daws Reply 11.

The Court finds that Plaintiffs' evidence establishes a factual dispute as to whether Daws's conduct reflected a "a conscious disregard of the probability that the actor's conduct will result in injury to others." Grimshaw, 119 Cal. App. 3d at 808. Accordingly, Daws's motion for summary judgment on the issue of punitive damages will be denied.

## IV. CONCLUSION

The Court orders as follows:

1. Summary judgment is DENIED to Daws Manufacturing Company, Inc. as to liability for Jose Cortes Diaz's injuries.

2. Summary judgment is GRANTED in favor of Daws Manufacturing Company, Inc. and Diversified Fasteners, Inc. as to liability for emotional distress injuries to Jesus and Margarita Diaz for witnessing injuries to Jose Cortes Diaz.

3. Summary judgment is GRANTED in favor of Daws Manufacturing Company, Inc. and Diversified Fasteners, Inc. as to liability for injuries to Jesus Cortes Diaz and related

---

[2] Diversified Fasteners does not move for summary judgment on the issue of punitive damages.

Case No.: 5:12-cv-05325-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
8

emotional distress injuries to Margarita Diaz and Itzel Diaz.

4. Summary judgment is DENIED to Daws Manufacturing Company, Inc. as to Plaintiffs' claims for punitive damages.

**IT IS SO ORDERED.**

Dated: August 11, 2017

EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-cv-05325-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

9